UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICKY R. DOOLITTLE,

                                      Plaintiff,                    1:25-cv-00148 (BKS/TWD)

v.

HARTFORD FINANCIAL SERVICES GROUP, INC.,

                                      Defendant.
_____

**Appearances:**

*Plaintiff pro se:*
Micky R. Doolittle
New Paltz, NY 12561

*For Defendant:*
Brian P. Downey
Troutman Pepper Locke LLP
100 Market Street, Suite 200
Harrisburg, PA 17101

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Micky R. Doolittle, proceeding pro se, originally filed this action against Defendant Hartford Financial Services Group, Inc.,[1] in the Supreme Court of New York, Ulster County, asserting state common law claims for breach of contract and bad faith in connection with Defendant's allegedly wrongful withholding of long-term disability benefit payments. (Dkt.

---

[1] Plaintiff filed suit against Harford Financial Services Group, Inc. However, Defendant has repeatedly identified a different entity, Hartford Life and Accident Insurance Company, as the proper defendant in this action. (*See, e.g.*, Dkt. No. 1, at 1; Dkt. No. 8, at 1; Dkt. No. 14, at 5; Dkt. No. 21, at 5). Defendant has not requested any further action from the Court, but states: "If Plaintiff's Complaint somehow were to survive the Motion and he persists in his efforts to sue the wrong party, that would serve as a separate basis for entering judgment in Defendant's favor." (Dkt. No. 21, at 5 n.1). Plaintiff should address this issue should he choose to file an amended complaint.

No. 2). Defendant removed this action under 28 U.S.C. § 1441(a), on the ground that Plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and on the basis of diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1). (Dkt. No. 1). Presently before the Court is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 8). The motion is fully briefed.[2] (Dkt. Nos. 14, 17, 19, 21, 23). For the following reasons, Defendant's motion is granted.

## II.   FACTS[3]

Plaintiff was insured under his employer's insurance policy, Policy No. GLT402952[4], which includes a long-term disability insurance plan issued by Defendant. (Dkt. No. 2, ¶¶ 3–4).

---

[2] Plaintiff filed a response to Defendant's motion to dismiss, (Dkt. No. 11), but then sought the Court's leave to amend the response, (Dkt. No. 12), which the Court granted, (Dkt. No. 15). The Court indicated that "[t]he amended response will be considered by the Court as the complete response, in place and instead of the response filed on 2/21/25." (Dkt. No. 15). Plaintiff submitted an amended response, (Dkt. No. 17), and then filed a second amended response, (Dkt. No. 19), without seeking the Court's leave. The original response, (Dkt. No. 11), and the amended response, (Dkt. No. 17), appear to be identical. Out of deference to Plaintiff's pro se status, the Court considers both Plaintiff's amended response, (Dkt. No. 17), and Plaintiff's second amended response, (Dkt. No. 19).

Plaintiff filed a surreply to Defendant's motion to dismiss without seeking the Court's leave, violating L.R. 7.1(a)(1) and the Court's text order: "Plaintiff has responded to the Defendant's motion to dismiss with the amended memorandum 8, 14, and no further submissions will be accepted from Plaintiff on this motion." (Dkt. No. 20). "[A]ll litigants, including pro ses, have an obligation to comply with court orders." *Shukla v. Deloitte Consulting LLP*, No. 19-cv-10578, 2021 WL 2418841, at *5, 2021 U.S. Dist. LEXIS 111057, at *14 (S.D.N.Y. June 14, 2021) (quoting *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)). "[W]hile a pro se plaintiff may not be aware of rules and obligations in the first instance, if a pro se plaintiff is clearly warned of those rules and obligations and still fails to follow them, 'they, like all litigants, must suffer the consequences of their actions.'" *Id.* (quoting *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005). Nonetheless, in an abundance of caution, the Court has considered Plaintiff's surreply.

[3] The facts are drawn from Plaintiff's complaint, (Dkt. No. 2), and the exhibits attached therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). The Court assumes the truth of and draws all reasonable inferences from the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[4] Plaintiff did not include this policy as an exhibit to his complaint. Defendant submitted two policies, one in its motion to dismiss, (Dkt. No. 8-3), and another in its reply, (Dkt. No. 21-4). Plaintiff disputes the accuracy of the policy Defendant attached to its motion to dismiss. (Dkt. No. 17, at 3; Dkt. No. 19, at 3). Plaintiff does not address the accuracy of the policy Defendant submitted in its reply, (Dkt. No. 21-4). Although the Court may consider a document not incorporated by reference to a complaint where the document is integral to the complaint, it must be "clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted). Because it is not clear that there is no dispute regarding

2

Plaintiff filed a claim for long-term disability benefits after suffering an injury from a motor vehicle accident on June 7, 2016. (*Id.* ¶¶ 5, 7). Plaintiff has included as an exhibit to his complaint, an "LTD Payment Options and Reimbursement Agreement for Social Security Benefits" ("LTD Agreement") that he appears to have signed on October 20, 2016. (*Id.* at 17–19). The LTD Agreement states that under Defendant's long-term disability policy, "Long Term Disability (LTD) benefits will be reduced by the amount of any Other Income Benefits which you are eligible to receive." (*Id.* at 17). The LTD Agreement defines "Other Income Benefit" as "Social Security Benefits." (*Id.*). Plaintiff was asked to inform Defendant "whether or not to use an estimated 'Other Income Benefit' amount" in the calculation of his monthly long-term disability benefits. (*Id.*) Plaintiff selected the option which states, "Please pay me my monthly Long Term Disability benefit with no reduction for Social Security Benefits. I understand that this may result in an overpayment of my LTD benefits which I will be required to refund to The Hartford in a lump sum." (*Id.*). Defendant later approved Plaintiff's disability claim and determined his gross monthly benefit to be $2,500 per month, effective September 5, 2016. (*Id.* ¶ 8; *id.* at 31).

Plaintiff also applied for disability benefits from the Social Security Administration. (*Id.* ¶ 6). Following a lengthy review and appeals process, the Social Security Administration approved Plaintiff's disability claim on December 19, 2019, over three years after Plaintiff had been receiving long-term disability payments from Defendant. (*Id.* ¶ 14). The Social Security Administration informed Plaintiff that he was entitled to retroactive payments for the time his claim was pending. (*Id.* ¶ 15).

---

the accuracy of the policy Defendant attached in its reply, the Court does not consider any of the policies Defendant submitted. However, the Court finds that they are not necessary to resolve Defendant's motion.

Plaintiff's counsel advised him that Defendant "may file a claim against those funds," so Plaintiff contacted Defendant to seek a "hardship consideration" of his claim. (*Id.* ¶¶ 15, 17). Plaintiff began corresponding with Teri McNair, "who worked in the Defendant's collections department." (*Id.* ¶¶ 16–18). During a phone call with McNair "on around March 29th" or "April 1st 2022" "the parties verbally agreed, on a recorded line, that the Plaintiff would pay a single lump sum payment of $10,000 in full satisfaction of any overpayment balance he would incur." (*Id.* ¶ 20; *id.* at 45–46; *id.* at 55). "It was the Plaintiff's understanding that the remaining [overpayment] balance would be waived in exchange" for the $10,000 payment. (*Id.* ¶ 20).

A few days later, on April 4, 2022, Plaintiff received a lump-sum payment for $31,000 "from the Social Security Administration representing the retroactive Social Security Disability benefit payments." (*Id.* ¶ 21; *id.* at 39). Plaintiff tendered a check for $10,000 to Defendant, dated April 11, 2022, writing "settled in full for $10,000" in the check memo. (*Id.* ¶ 22–23; *id.* at 42). Attached to the complaint is a copy of an April 11, 2022 fax from Plaintiff stating, *inter alia*, "As agreed on our phone call on around March 29th I am sending you a check for $10,000…The lady on the phone said I could send the $10.000 [*sic*] in as payment and I could use the rest to pay my bank, I want to thank the Hartford for understanding and having a heart when it feels like there is no hope left anymore."[5] (*Id.* at 45–46).

"Shortly thereafter," Defendant sent Plaintiff a letter informing him that Plaintiff's Social Security Disability Benefits were considered "Other Income Benefits," as defined by the long-term disability policy. (*Id.* ¶ 24). Defendant notified Plaintiff that "an offset was retroactively applied to [his] claim account," and "an overpayment was generated." (*Id.*).

---

[5] The copy does not reflect to whom Plaintiff sent the correspondence.

On or about April 19, 2022, Defendant cashed Plaintiff's check. (*Id.* ¶ 25). "Plaintiff received payment from the Defendant in the amount of $505" on April 20, 2022. (*Id.* ¶ 26). "Defendant began withholding payments" in May 2022, and continues to withhold payments "to date." (*Id.* ¶¶ 26–28).

Plaintiff called and wrote to Defendant multiple times to dispute the overpayment status of his claim and to challenge Defendant's withholding of his benefit payments. (*Id.* ¶¶ 28–32, 34–36, 39). Plaintiff received a letter from Defendant on December 20, 2023. (*Id.* ¶ 30), The letter stated that "Plaintiff's [long-term disability] claim was overpaid in the amount of $31,880, and that his monthly payment was "subject to reduction by his monthly [Social Security Disability Benefit] payment." (*Id.* ¶ 30–31).

Plaintiff filed an administrative appeal on July 30, 2024. (*Id.* ¶ 35; *id.* at 55–56). Defendant returned a decision letter to Plaintiff on August 8, 2024, noting that it had "completed [its] review" of Plaintiff's appeal, and upheld its original determination that Plaintiff's claim was overpaid. (*Id.* at 58). Defendant's decision letter reproduced the relevant portions of the policy terms it relied on in reaching its decision. (*Id.* at 58–59). It explained that under the policy, an overpayment can occur "when [Defendant] determine[s] that the total amount [Defendant] ha[s] paid in benefits is more than the amount that was due to [Plaintiff] under The Policy." (*Id.* at 59). Specifically, an overpayment can result from "retroactive awards received from sources listed in the Other Income Benefits definition." (*Id.*). Defendant stated that: "The application of the overpayment was in accordance with the Policy and in accordance with the signed and dated LTD Payment Options and Reimbursement Agreement for Social Security Benefits form. Because of this, the overpayment and Overpayment Recovery by The Hartford is upheld on

5

appeal." (*Id.* at 60). The letter informed Plaintiff of his "rights under Section 502(a) of ERISA to bring a civil action disputing this adverse benefit decision." (*Id.*).

Plaintiff wrote to Defendant again on August 21, 2024 and September 3, 2024. (*Id.* ¶ 39; *id.* at 64). Defendant responded on September 6, 2024, reiterating its original decision and reproducing the guideline it relied on in reaching that decision: Defendant can "reduce or offset against any future benefits payable to [Plaintiff]…including the Minimum Monthly Benefit, until full reimbursement is made." (*Id.* ¶ 39; *id.* at 66). Defendant concluded by stating that its "claim decision is now final as administrative remedies available under the Policy have been exhausted." (*Id.* ¶ 39; *id.* at 65).

### III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor and City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]here, as here, a plaintiff is proceeding pro se, the complaint must be considered under a more lenient standard than that accorded 'formal pleadings drafted by lawyers.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (citation omitted). A pro se plaintiff's complaint is to be liberally construed "to raise the strongest arguments that it

suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020) (citation omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## IV.  DISCUSSION

### A.  Express Preemption

Defendant argues that Plaintiff's state law claims for breach of contract and bad faith are expressly preempted by ERISA and must be dismissed. (Dkt. No. 14, at 12–15). Plaintiff opposes dismissal, arguing that "this case is not based on the ERISA policy but on the actions committed [by Defendant] where they breached a verbal and written agreement" to resolve the overpayment on his claim.[6] (Dkt. No. 19, at 3). Specifically, Plaintiff argues that the $10,000 check he paid to Defendant constitutes an "accord and satisfaction." (Dkt. No. 2, at 52; Dkt. No. 17, at 6; Dkt. No. 19, at 4–5).

Here, Defendant removed the complaint, which contains two state law causes of action, on the ground that they are completely preempted by ERISA[7] and that there is complete diversity

---

[6] Plaintiff argues that "[i]f this is a breach of the ERISA then the court should then refer this case to a criminal court." (Dkt. No. 19, at 3). The Court denies this request as courts "cannot tell the government whom to prosecute" because "the decision whether or not to prosecute . . . generally rests entirely in [the prosecutor's] discretion." *United States v. Blaszczak*, 56 F.4th 230, 259 (2d Cir. 2022) (Sullivan, J. dissenting) (citation omitted); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

[7] Defendant's Notice of Removal suggests confusion regarding the difference between express preemption under Section 514(a) of ERISA, 29 U.S.C. § 1144(a) and the related, but different doctrine of complete preemption. Defendant's Notice of Removal argues that "Federal question jurisdiction exists over this action because Plaintiff's Complaint alleges only claims that have a connection with the Plan." (Dkt. No. 1 ¶ 14). The term "connection with" derives from *Egelhoff v. Egelhoff*, which Defendant cites in its Notice of Removal, (Dkt. No. 1 ¶ 12), and which explains that a state law relates to an ERISA plan and is thus *expressly* preempted by ERISA if it has a "connection with or reference to such a plan." 532 U.S. 141, 147 (2001) (emphasis added) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). However, express preemption is one of the forms of ordinary defensive preemption: it "cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint. *Wurtz v. Rawlings*, 761 F.3d 232, 238 (2d Cir. 2014). Complete preemption, which is subject to an entirely different analysis than express preemption, *see Arditi v. Lighthouse Intern.*, 676 F.3d 294, 299 (2d. Cir. 2012), does support federal jurisdiction because the "extraordinary preemptive force" of ERISA transforms state law claims that fall within the scope of Section 502(a) of ERISA into federal claims under Section 502(a) for jurisdictional purposes. *See Fairmont Ins.*

7

of citizenship between the parties. The Court has subject matter jurisdiction over this action as there is complete diversity of citizenship between the parties under 28 U.S.C. § 1332(a)(1), and the propriety of the removal is not at issue here. The Court therefore need only consider whether Plaintiff's breach of contract and bad faith claims are expressly preempted by Section 514(a) of ERISA and subject to dismissal. *See, e.g.*, *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) ("Because there is no question regarding the Court's jurisdiction, the Court does not analyze Dr. Chau's state law claims using the doctrine of 'complete preemption.' Instead, the Court considers whether the claims are expressly preempted by Section 514 of ERISA.").

The Court cannot reach the merits of Plaintiff's state law claims until it determines that they are not expressly preempted by ERISA. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, No. 22-cv-10312, 2023 WL 2478642, at *1, 2023 U.S. Dist. LEXIS 42030, at *3 (S.D.N.Y. Mar. 13, 2023) (declining to discuss the merits of the plaintiff's state law claims after finding those claims expressly preempted by ERISA), *reconsideration denied*, No. 22-cv-10312, 2023 WL 4866045, 2023 U.S. Dist. LEXIS 132684 (S.D.N.Y. July 31, 2023), and *aff'd*, No. 23-1134-cv, 2024 WL 2813721, 2024 U.S. App. LEXIS 13277 (2d Cir. June 3, 2024). Section 514(a) of ERISA contains a preemption provision providing, with certain exceptions not relevant here, that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir.

---

*Brokers Ltd. v. HR Serv. Grp.*, No. 23-cv-8654, 2024 WL 4871421, at *4, 2024 U.S. Dist. LEXIS 213261, at *10 (E.D.N.Y. Nov. 22, 2024).

2008) (quoting *Shaw*, 463 U.S. at 96–97). A state law has a "reference to" an ERISA plan where the law "acts immediately and exclusively upon ERISA plans" or where "the existence of ERISA plans is essential to the law's operation." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016) (citation omitted); *see also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 230 (3d Cir. 2020) (reciting different formulations for claims that make impermissible "reference to" ERISA plans, including claims that are "premised on" a plan because "the existence of ERISA plans is essential to the law's operation"; the "court's inquiry must be directed to the plan"; the existence of an ERISA plan "is a critical factor in establishing liability"; or "there simply is *no* cause of action if there is no plan" (citations omitted)). A state law has an impermissible "connection with" ERISA plans if it "governs a central matter of plan administration" or "interferes with nationally uniform plan administration." *Gobeille*, 577 U.S. at 320 (ellipsis and citation omitted).

      The Court must look at Plaintiff's claims against this express preemption provision for two reasons. First, there appears to be no dispute that Plaintiff's long-term disability policy is governed by ERISA. *See Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.* 440 F.3d 571, 576 (2d Cir. 2006) ("Long-term disability plans fall within ERISA's definition of an employee benefit welfare plan.") (internal quotation marks and citations omitted). Second, Plaintiff's breach of contract and bad faith claims are governed by state law. *See Milhouse v. Morgan and Morgan, P.A.*, No. 23-cv-7016, 2023 WL 7132073, at *3, 2023 U.S. Dist. LEXIS 194139, at *6 (S.D.N.Y. Oct. 27, 2023) (stating that breach of contract claims arise under state law); *Barton v. Ne. Transp., Inc.*, No. 21-cv-326, 2022 WL 203593, at *5, 2022 U.S. Dist. LEXIS 12354, at *13 (S.D.N.Y. Jan. 24, 2022) (stating that claims for breach of the implied covenant of good faith and fair dealing arise under state law). Claims brought under state law that are "supersede[d]," or, in

other words, expressly preempted, by ERISA cannot proceed as pleaded and are dismissed. *See, e.g.*, *Pronti v. CNA Fin. Corp.*, 353 F. Supp. 2d 320, 324 (N.D.N.Y. 2005) (dismissing breach of contract claim as expressly preempted by ERISA); *Chau*, 167 F. Supp. 3d at 571–72 (dismissing state law claims, including tortious interference with contract and breach of the covenant of good faith and fair dealing, as expressly preempted by ERISA).

B.   **Plaintiff's Breach of Contract Claim Is Expressly Preempted**

Plaintiff asserts a claim for breach of contract. (Dkt. No. 2, ¶ 46). He alleges that Defendant has been "applying [Plaintiff's monthly long-term disability] payment(s), in breach of the parties [*sic*] Agreement, towards the alleged outstanding overpayment balance," (*Id.* ¶ 38), and that as a result, Plaintiff "has been without [long-term disability] benefit payments since May of 2022." (*Id.* ¶ 41). Defendant argues that Plaintiff's claim is preempted because "it is based on the Hartford's allegedly improper recovery of Plaintiff's [long-term disability] insurance benefits due to an overpayment under an ERISA-qualified plan." (Dkt. No. 14, at 9).

Plaintiff's breach of contract claim is preempted by ERISA because it "relate[s] to" his employee benefit plan. *See* 29 U.S.C. § 1144(a). To state a breach of contract claim under New York law, Plaintiff must plead: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (citation omitted). In *Pronti*, the plaintiff sought to "supersede the written terms of the [employee benefit] plan and replace them with the alleged agreement between [the plaintiff] and [his employer]. 353 F. Supp. 2d at 324. However, the court found that the plaintiff's breach of contract claim was expressly preempted by ERISA because "[t]he agreement that [the plaintiff] claims was breached dealt explicitly and exclusively with an [employee benefit] plan" covered by ERISA. *Id.* Here, like in *Pronti*, Plaintiff seeks to substitute the written terms on the overpayment of benefits in his long-

10

term disability plan with the alleged agreement he reached with Defendant. Because the alleged agreement likewise deals "explicitly and exclusively," *see id.*, with the terms of his long-term disability plan, an employee benefit plan covered by ERISA, Plaintiff's breach of contract claim "relate[s] to" that plan and is therefore preempted. *See* 29 U.S.C. 1144(a); *see also Chau*, 167 F. Supp. 3d at 572 (S.D.N.Y. 2016) (finding, as pled, the plaintiff's breach of contract claims "all relate to the Plan and are preempted by ERISA, for it has long been established in this Circuit that breach of contract claims arising from a failure to pay benefits under an ERISA plan are preempted").

Moreover, calculating any potential recovery for Plaintiff's breach of contract claim "would require reference to [his policy]," *see Paneccasio*, 532 F.3d at 114 (preempting the plaintiff's breach of contract claim, in part because the calculation of any recovery "would require reference to the Plan"), because Plaintiff's request for damages is based on amounts set by his policy, (*see* Dkt. No. 19, at 15–17). *See also Zarringhalam v. United Food & Com. Workers Int'l Union Loc. 1500 Welfare Fund*, 906 F. Supp. 2d 140, 150 (E.D.N.Y. 2012) ("Because plaintiff seeks a recovery of benefits, his claim relates to an employee welfare benefit plan covered by ERISA, and thus, is preempted.") (internal quotation marks and brackets omitted).

### C. Plaintiff's Bad Faith Claim is Expressly Preempted

Construed liberally, the complaint also asserts a cause of action alleging that Defendant "acted in bad faith" by "usurping Plaintiff's monthly [long-term disability] payment" and "applying said payment(s), in breach of the parties' agreement towards the alleged outstanding overpayment balance." (Dkt. No. 2, ¶¶ 38, 47; *see also* Dkt. No. 17, at 7 (arguing that Defendant acted in "[b]ad faith in the extreme activities that they are doing, not in the best interest in myself, their insured policyholder")). Defendant notes that "[i]t is not entirely clear what

11

Plaintiff contends is the basis of these claims," (Dkt. No. 14, at 13) but moves for dismissal on the ground that "[b]oth the Supreme Court and courts within the Second Circuit have held that state law claims for alleged common law bad faith are preempted by ERISA." (*Id.* at 14).

The Court agrees that the specific basis for Plaintiff's bad faith claim is unclear. However, because the bad faith claim is based on the same set of allegations as Plaintiff's breach of contract claim, the Court finds that it is likewise preempted for the same reasons stated *supra*. *See, e.g.*, *Paneccasio,* 532 F.3d at 114 (finding the plaintiff's state law claim for breach of the covenant of good faith and fair dealing under Section 514(a) of ERISA expressly preempted because it was "premised" on an employee benefit plan, made "explicit reference to the Plan," and would require "reference to" the Plan in the calculation of any recovery"); *Rosen v. UBS Fin. Servs., Inc.*, No. 22-cv-03880, 2023 WL 6386919, at *6, 2023 U.S. Dist. LEXIS 177101, at *15–18 (S.D.N.Y. Sept. 29, 2023) (finding, at summary judgment stage, the plaintiff's claim for breach of the covenant of good faith and fair dealing under Section 514(a) of ERISA expressly preempted because the claim was premised on an employee benefit plan and its terms, sought recovery under the terms of the plan, and implicated central ERISA entities and functions).

Plaintiff seeks consequential damages for "credit card and personal loan debt incurred due to Defendant's breach and bad faith." (Dkt. No. 2, ¶ 49). Defendant claims that Plaintiff's request for such relief is "an attempt to duplicate, supplement or supplant an ERISA civil enforcement remedy and is, therefore preempted." (Dkt. No. 14, at 15). The Court need not reach this issue because both of Plaintiff's causes of action are expressly preempted; as such, no other grounds for relief remain.

    **D.**    **Leave to Amend**

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."

12

*Matima v. Celli*, 228 F.3d 68, 81 (2d Cir 2000) (internal quotation marks and citations omitted). A pro se plaintiff should have at least one chance to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, a court may deny even a pro se plaintiff leave to amend when amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

An amended complaint alleging breach of contract or bad faith would be futile in this case. However, in view of Plaintiff's pro se status and because the Court cannot say filing an amended complaint asserting a claim pursuant to ERISA under 29 U.S.C. § 1132(a)(1)(B) would be futile, the Court will permit Plaintiff to amend his complaint.[8] *See Grabinski v. Portfolio Recovery Assocs., LLC*, No. 11-cv-9712, 2012 WL 1877251, at *1, 2012 U.S. Dist. LEXIS 78655, at *1–2 (S.D.N.Y. Apr. 19, 2012) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks and citations omitted)). Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the

---

[8] While courts have held that an ERISA plan cannot be modified orally, *Ladoucer v. Credit Lyonnais*, 584 F.3d 510, 512 (2d Cir. 2009) ("Oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan) (quoting *Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002)); *see also* 29 U.S.C. §1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a *written* instrument . . . .") (emphasis added), a plan participant may bring an action to "recover benefits due to him under the terms of his plan." *See* 29 U.S.C. § 1132(a)(1)(B).

13

operative documents—everything that is essential must be contained in or attached to the Amended Complaint.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims for breach of contract and bad faith are **DISMISSED without prejudice**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, the Clerk of the Court is directed to close this case without further order.

**IT IS SO ORDERED.**

Dated: September 5, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge