**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICKY R. DOOLITTLE,

Plaintiff, 1:25-cv-00148 (BKS/CBF)

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant.

---

**Appearances:**

*Plaintiff pro se:*
Micky R. Doolittle
Pine Bush, NY 12566

*For Defendant:*
Tristan Johnston
Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Micky R. Doolittle brought this action *pro se* against Defendant Hartford Life and Accident Insurance Company asserting state law claims in connection with Defendant's withholding of Plaintiff's long-term disability benefit payments. (Dkt. No. 2). After the Court found Plaintiff's state law claims preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), (Dkt. No. 26), Plaintiff amended his complaint. (Dkt. No. 29). Hartford moved to dismiss Plaintiff's amended complaint, (Dkt. No. 31), and the Court denied Hartford's motion insofar as Plaintiff plausibly asserted a cause of action under

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), based on his allegation that Hartford continued to withhold Plaintiff's LTD benefits even after its overpayment of benefits had been recovered. (Dkt. No. 39, at 5).

Presently before the Court are Plaintiff's motion for summary judgment, (Dkt. Nos. 55, 56), and Defendant's cross-motion for summary judgment, (Dkt. No. 60). The motions are fully briefed. (Dkt. Nos. 61, 62, 63, 64, 65, 66). For the reasons that follow, the Court denies Plaintiff's motion and grants Defendant's motion.

## II. FACTS[1]

### A. The Policy

Plaintiff is a participant in an employee welfare benefit plan governed by ERISA. (Dkt. No. 61-1, at ¶ 1; Policy 32–33; R. 33–36). Plaintiff was previously employed by New England Motor Freight, Inc. (R. 2659–61). After suffering injuries stemming from a motor vehicle accident, Plaintiff applied for long-term disability ("LTD") benefits provided under his employer's benefit plan. (*Id.*; *see also* R. 413). Plaintiff's LTD benefits are administered pursuant to the terms of an insurance policy (the "Policy") issued by Defendant Hartford. (Dkt. No. 61-1, at ¶ 1; Policy 32). While Hartford serves as claim administrator for the plan, New England Motor Freight, Inc. is the plan administrator, policy holder, and employer sponsoring the plan. (*Id.*).

---

[1] The facts are drawn from the parties' statements of material facts, (Dkt. No. 56-1; Dkt No. 60-1; Dkt. No. 64, at 15–16), and the parties' responses to the statements of material facts, (Dkt No. 61-1; Dkt. No. 64, at 9–15; Dkt. No. 65), to the extent the facts are well-supported by pinpoint citations to the record, as well as the documents attached thereto and cited therein. When citing the administrative record, the Court refers to the documents Defendant uploaded at Dkt. No. 58 as "R." However, references to the insurance policy, which Defendant filed with separate Bates numbering from the rest of the administrative record, are indicated as "Policy." The facts are construed in favor of the non-moving party on an issue. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

The Policy provides Hartford with "full discretion and authority to make an initial determination and interpretation of [its] terms and provisions." (Policy 19; *see also id.* at 32 ("The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.")). The Policy calculates monthly LTD benefits by multiplying the claimant's Monthly Income Loss by his or her benefit percentage and deducting from that number any "Other Income Benefits." (Policy 12–13, 21). Other Income Benefits are "the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy," which includes "disability benefits under . . . the United States Social Security Act." (Policy 21).

An overpayment of LTD benefits occurs when "the total amount [Hartford] paid in benefits is more than the amount that was due to [Plaintiff] under The Policy." (Policy 18). For example, an overpayment may occur when "retroactive awards [are] received from sources listed in the Other Income Benefits definition." (*Id.*). The Policy further provides that Hartford "may make a retroactive allocation of any retroactive Other Income Benefit," and that "[a] retroactive allocation may result in an overpayment of Your claim." (Policy 21).

The Policy grants Hartford the right to recover from the claimant an amount it deems to be an overpayment and obliges the claimant "to refund to [Hartford] any such amount." (Policy 17–18). If benefits are overpaid on any claim, the claimant must reimburse Hartford within 30 days. (*Id.*). Otherwise, Hartford maintains a right to recover the overpayment from the claimant, including by "reduc[ing] or offset[ting] [it] against any future benefits payable . . . including the Minimum Monthly Benefit, until full reimbursement is made." (*Id.* at 18). Similarly, if Hartford's withholding of a claimant's monthly benefits results in an underpayment, then

Hartford owes the claimant a refund: if the "Social Security benefits were lower than [Hartford] estimated, and [Hartford] owe[s] [the claimant] a refund, [it] will make such refund in a lump sum." (*Id.*). The Policy further provides that the parties' "rights and . . . obligations in this regard may also be set forth in the reimbursement agreement" which Plaintiff was "required to sign when [he became] eligible for benefits." (*Id.*).

**B. Plaintiff's LTD Benefits and the Reimbursement Agreement**

On or around October 3, 2016, Plaintiff filed a claim for LTD benefits, citing injuries from a June 2015 motor vehicle accident, as well as a prior work accident. (R. 2659–63; 413). Around the same time, on October 13, 2016, Plaintiff's claim for Social Security Disability ("SSD") benefits was denied. (R. 2528). On December 2, 2016, Hartford approved Plaintiff's claim for LTD benefits. (R. 33). Plaintiff's initial LTD benefits check was for $5,054.88 and covered the period of September 5, 2016 through November 30, 2016. (R. 36–38).

Also in 2016, Plaintiff signed the LTD Payment Options and Reimbursement Agreement for Social Security Benefits (the "Reimbursement Agreement"). (R. 2629). The Reimbursement Agreement permitted Plaintiff to elect "whether or not to use an estimated 'Other Income Benefit' amount" when Plaintiff had applied for Social Security benefits but "no decision [had] yet been made on that application." (*Id.*). Under Option A, Plaintiff's LTD benefits would have been reduced by an estimated amount of Social Security benefits, and then Hartford would adjust Plaintiff's monthly LTD benefit once the actual amount of Social Security benefits was awarded or denied. (*Id.*).

Plaintiff did not select Option A. (*Id.*). Plaintiff chose Option B, which provided:

> Please pay me my monthly Long Term Disability benefit with no reduction for Social Security Benefits. I understand that this may result in an overpayment of my LTD benefits which I will be required to refund to The Hartford in lump sum.

(*Id.*). The Reimbursement Agreement that Plaintiff completed also explained that "Hartford has the option to reduce or eliminate any future Long Term Disability benefit payments in order to recover any overpayment balance that [the claimant does] not reimburse." (*Id.*).

### C. The Overpayment

Plaintiff appealed the October 2016 denial of his claim for SSD benefits, and, on or around March 26, 2022, the Social Security Administration (the "Administration") found Plaintiff had become disabled as of December 19, 2019. (R. 1408). The Administration thus found Plaintiff entitled to an award of $41,781.00[2] in retroactive SSD benefits for the period of June 2020 through February 2022. (R. 1403, 1408–09). The Administration also informed Plaintiff that his regular monthly payment, effective March 2022, would be $2,097.00. (*Id.*).

The Administration withheld $10,445.25 from Plaintiff's retroactive SSD award "in case [the Administration] need[s] to pay the [appointed] representative," resulting in a $31,335.75 lump sum payment, which the Administration sent to Plaintiff on or around March 23, 2022. (R. 1403, 1408–09). The Administration informed Plaintiff that the $10,445.25 withheld for a representative fee was calculated as equal to twenty-five percent of Plaintiff's total past-due benefits, as the Administration "cannot withhold more than 25 percent of past-due benefits to pay an authorized fee." (*Id.*). Before a representative can charge his or her fee, the Administration "must first approve the fee." (R. 1409). Records from an April 19, 2022 phone call with a Hartford representative indicate that Plaintiff stated his award letter from the

[2] Specifically, Plaintiff was owed $1,955 in monthly payments for the period of June 2020 to November 2020, $1,980.70 for the period of December 2020 to November 2021, and $2,097.50 for December 2021 through February 2022. (R. 1406).

Administration had withheld $10,445.00, but that he estimated he would later receive the "remaining" amount of "$4,445.25." (R. 455).[3]

In March 2022, Hartford initially calculated that Plaintiff's award of retroactive monthly SSD benefits resulted in an overpayment of $43,890.00 for the period of June 1, 2020 through March 31, 2022. (R. 457–58). This amount is equal to $1,995.00, Plaintiff's estimated monthly SSD benefit, applied over twenty-two months. (R. 458). In April 2022, Plaintiff paid a $10,000.00 reimbursement (the "Reimbursement") to Hartford. (Dkt. No. 61-1, at ¶ 6; Dkt. No. 64, at ¶ 20; R. 455–56). Following the Reimbursement, Hartford deducted $10,000.00 from Plaintiff's Overpayment, so that the updated balance was $33,890.00, less $6,000.00 in attorney fees, for a total overpayment of $27,890.00. (R. 452). Hartford indicated that it credited $6,000.00 toward attorney fees because this was the "maximum allowable . . . fee." (R. 457–58; 444–45).

Records from an April 4, 2022 phone call indicate that Hartford informed Plaintiff that it would need "to set up withholding" in order to offset the remaining Overpayment balance. (R. 456). Thus, on or around May 20, 2022, Hartford began withholding Plaintiff's monthly LTD benefits to recover the remaining Overpayment. (R. 452–53). According to records from a July 12, 2022 phone call, a representative of Hartford explained to Plaintiff that, "even though he is not receiving LTD benefits at this time, he is entitled to receive them and [they] are being applied toward the overpayment." (R. 445). Also on July 12, 2022, Hartford corrected an initial

[3] The parties have not briefed what fee the Administration ultimately approved, if any, and the Court is unable to identify documentation in the record regarding the approved representative fee, or whether the $4,445.25 difference was refunded to Plaintiff. The Court notes that Federal Rule of Civil Procedure 56 does not "impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470–71 (2d Cir. 2002)).

error[4] in its Overpayment calculation, which had resulted in an Underpayment of $40.00 over 25 months, or $1,000.00. (R. 451, 444). Hartford then determined the total Overpayment as of July 2022 to be $43,890.00, or $25,880.00 after applying credits from the Reimbursement ($10,000), LTD benefits withheld in May and June 2022 ($1,010), the Underpayment on account of the initial typographical error ($1,000), and attorney's fees ($6,000). (*Id.*). On August 11, 2022, Plaintiff informed Hartford that he had received a letter stating the Overpayment amount was $118,000. (R. 440). A letter dated the same day indicates that Hartford immediately informed Plaintiff of the correct Overpayment balance as of that date, or $31,335.00. (R. 284).

As Hartford withheld Plaintiff's LTD benefits, the Overpayment balance accordingly decreased over time. (*See, e.g.*, R. 1133 (Overpayment balance of $29,155.00 as of November 29, 2022); R. 1109–10 ($19,880.00 as of December 20, 2023); R. 848 ($12,850.00 as of April 24, 2025)). In November 2024, Hartford applied Plaintiff's monthly LTD benefits and credited an additional $500.00 to the overpayment balance. *See* R. 386–87. Hartford "is not seeking to recover this $500.00 credit." (Dkt. No. 60-2, at 10 n.4). As of March 9, 2026, the Overpayment balance was $7,400.00, or $1,400.00 after applying the $6,000.00 attorneys' fee credit. (Dkt. No. 61-1, at ¶ 7; R. 335).

After the parties moved for summary judgment, counsel for Hartford notified the Court that, as of July 9, 2026, the Overpayment had been recouped in full, and that Plaintiff had also been issued a refund of $780.00. (Dkt. No. 67, at 2; Dkt. No. 67-1). On July 24, 2026, Plaintiff filed a notice with the Court confirming that his LTD benefit payments had resumed and that he had received a check for the July 2026 period. (Dkt. No. 74, at 1–2).

[4] Hartford's acknowledged error is that it applied $1,995.00, instead of $1,955.00, when calculating Plaintiff's monthly SSD payment. (Dkt. No. 60-2, at 9 n.6 (citing R. 451)).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (per curiam) (explaining that summary judgment is appropriate where the nonmoving party fails "'to come forth with evidence sufficient to permit a reasonable juror to return a verdict in [their] favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles*

*v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations adopted) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Where, as here, both parties have filed motions for summary judgment, "the court must evaluate each party's motion on its own merits." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

A *pro se* litigant's pleadings should generally be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). However, a *pro se* party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024) ("'[C]onclusory statements or mere allegations' will not suffice to defeat summary judgment." (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)).

## IV. DISCUSSION

### A. Arbitrary and Capricious Review

Section 502(a) of ERISA, codified at 29 U.S.C. § 1132(a), permits a beneficiary of an employment benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

"The Supreme Court has held . . . that a 'denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Fay v. Oxford Health Plan*, 287 F.3d 96, 103–04 (2d Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Thus, "where . . . written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [the Court] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (internal quotation marks and citation omitted).

In the ERISA context, arbitrary and capricious means "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015) (internal quotation marks omitted). The arbitrary and capricious standard is "highly deferential, and the scope of judicial review is narrow." *Id.* at 211. "Accordingly, a plan administrator's decision is intended to be final—within the bounds of the highly deferential arbitrary-and-capricious standard—and not merely an input with the potential to assist the Court in making the ultimate determination." *Id.* at 217.

The Policy at issue here grants Hartford "full discretion and authority to make an initial determination and interpretation of [the Policy's] terms and provisions." (Policy 19; *see also id.* at 32 ("The Plan has granted the Insurance Company full discretion and authority to determine eligibility and to construe and interpret all terms and provisions of the Policy.")). The Court thus reviews Hartford's withholding of LTD benefits under the arbitrary and capricious standard. *See DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 481 (S.D.N.Y. 2015) (finding similar

language required the court to apply the arbitrary and capricious standard and collecting cases finding the same).

**B. Denial of Benefits**

Plaintiff argues that Hartford wrongfully denied his LTD benefits in violation of ERISA § 502(a)(1)(B) when it withheld his benefits in order to recover an overpayment balance "with no consistent calculation or documented rationale." (Dkt. No. 55, at 3). Hartford, on the other hand, asserts that it is entitled to judgment in its favor because it recovered the overpayment pursuant to the Policy's terms and that its calculations of the overpayment were consistent and supported by the record. (Dkt. No. 60-2, at 13; Dkt. No. 61, at 14–16).

"Under the arbitrary and capricious standard of review, [a court] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (citation omitted); *see also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The question before a reviewing court under this standard is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (internal quotation marks and citation omitted)). "Substantial evidence in turn 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)). Further, "[t]o maintain a claim pursuant to ERISA § 502(a)(1)(B), a plaintiff must demonstrate that the employee benefit plan in question is a plan covered by ERISA, that he is a participant in or beneficiary of the plan, and that he exhausted administrative remedies." *Pelosi v. Schwab Cap. Mkts., L.P.*, 462 F. Supp. 2d 503, 509 (S.D.N.Y. 2006) (citation omitted).

Here, as an initial matter, there is no dispute that Plaintiff signed the Reimbursement Agreement and selected Option B. (Dkt. No. 64, at 12).[5] As discussed above, in choosing Option B, Plaintiff requested that Hartford pay his monthly LTD benefits with no reduction for SSD benefits and acknowledged that his choice could result in an overpayment which he would be required to refund to Hartford. (R. 2629; *see also* Policy 18, 21).

"Courts in the Second Circuit routinely have enforced SSDI offset provisions in ERISA Plans as written, as well as Reimbursement Agreements similar to [the one] at issue here." *Schlenger v. Fidelity Employers Servs. Co., LLC*, 785 F. Supp. 2d 317, 334 (S.D.N.Y. 2011); *see Mugan v. Hartford Life Grp. Ins. Co.*, 765 F. Supp. 2d 359, 373–75 (S.D.N.Y. 2011)); *Fortune v. Grp. Long Term Disability Plan for Emps. of Keyspan Corp.*, 637 F. Supp. 2d 132, 145–46 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 74 (2d Cir. 2010); *see also* 3 *ERISA Practice and Litigation* § 13:20 (2026) ("[O]nce the participant is determined to be eligible for ERISA-governed LTD benefits, the participant's benefits will commonly be reduced or subject to offset by the amount of Social Security disability benefits that are payable."). Moreover, in *Leonelli v. Pennwalt Corp.*, the Second Circuit affirmed a finding that a plaintiff's amended ERISA "[c]laims under the Long Term Disability Plan would be futile because, under the terms of that plan, whatever benefits [the plaintiff] could recover would be completely offset by worker's

[5] Plaintiff repeatedly asserts that there is a genuine dispute of material fact regarding the "accuracy of Defendant's calculations" and whether Hartford "over-withheld benefits." (Dkt. No. 64, at 7). For example, although Plaintiff admits that "he sent Hartford [a] $10,000" reimbursement, Plaintiff disputes the accuracy of the alleged outstanding balance after the $10,000 payment." (Dkt. No. 64, at ¶¶ 20–21). However, Plaintiff does not cite any evidence in support of this assertion. And the administrative record shows that a $10,000 credit was applied to the balance. (R. 452). The Court therefore notes at the outset that, where "the non-movant has failed to put forth any admissible evidence creating a material question of fact," there is no genuine dispute of fact and "summary judgment is appropriate." *Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*, No. 09-cv-4084, 2012 WL 242835, at *9, 2012 U.S. Dist. LEXIS 8666, at *26 (S.D.N.Y. Jan. 24, 2012); *see also Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996) (Where there is no "evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper.).

compensation and social security benefits he presently receives." 887 F.2d 1195, 1198–99 (2d Cir. 1989).[6]

Hartford was therefore entitled under the plain language of the Policy and Reimbursement Agreement to withhold Plaintiff's benefits in order to recover its Overpayment. Nevertheless, Plaintiff argues that Hartford wrongfully denied him LTD benefits he was owed because "Defendant's calculations [of the Overpayment] changed over time and included acknowledged errors." (Dkt. No. 64, at 6). Hartford admits that its calculations "changed over time"—indeed, the Overpayment amount necessarily decreased, as Hartford recovered the Overpayment over time by withholding Plaintiff's LTD benefits and applying other credits to Plaintiff's balance. (Dkt. No. 65, at ¶ 9). Hartford also admits that it acknowledged a typographical error in its original calculation of the Overpayment—an error it promptly corrected and credited to Plaintiff's balance. (*Id.* at ¶ 10; R. 451, 444).[7]

Plaintiff cites three documents which he claims show inconsistencies in Hartford's calculations. (Dkt. No. 55, at 2 (citing R. 296–97, 848, 1133)). But these documents are all consistent with a reduction in the balance based on monthly withholding Plaintiff's LTD benefits. For example, Plaintiff cites a December 20, 2023 letter sent to him by Hartford which provides that his total overpayment balance for the period of June 1, 2020 through June 30, 2022

---

[6] Fiduciaries of ERISA plans may also bring suit under ERISA section 502(a)(3), codified at 29 U.S.C. § 1132(a)(3)(B), to recover overpayments to beneficiaries resulting from a retroactive award of Social Security benefits. *See Mugan*, 765 F. Supp. 2d at 374 (collecting cases); *First Unum Life Ins. Co. v. Wulah*, No. 06-cv-1749, 2010 WL 2541273, at *7–8, 2010 U.S. Dist. LEXIS 68392, at *14–17 (S.D.N.Y. June 17, 2010) (granting summary judgment on insurer's claim that the participant was required to reimburse the insurer for an overpayment due to a later award of Social Security benefits). However, the plan fiduciary "must seek not to impose personal liability on the [claimant], but to restore to the [Plan] particular funds or property in the [claimant's] possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Courts in this Circuit have thus granted judgment to ERISA fiduciaries when they have brought suit to recover the overpayment of LTD benefits due to a failure to offset later awarded SSD benefits. *See Mugan*, 765 F. Supp. 2d at 374–75; *Schlenger*, 785 F. Supp. 2d at 334–335.

[7] Hartford also acknowledges that it sent a document to Plaintiff in or around August 2022 containing an error regarding the Overpayment amount. (Dkt. No. 65, at ¶¶ 4–5; R. 440). The same day it was notified of the error, Hartford corrected it and informed Plaintiff of the correct balance. (R. 284).

is $31,880.00. (R. 296–97). The letter expressly states that this amount accounts for both the $1,000.00 Underpayment and the $11,010.00 Refund, or the $10,000.00 Reimbursement paid by Plaintiff in lump sum, plus the $1,010 in LTD benefits withheld in April and May 2022. (*Id.*). The letter also explains that Plaintiff is "not required to repay [SSD] benefits withheld by Social Security and paid to your representative," and that Hartford would therefore "credit the [$6,000 attorney's] fee amount" once Plaintiff had repaid $25,880.00, and "the overpayment balance [would then] be reduced to zero." (R. 297). This calculation is consistent and supported by the overall record.[8]

Upon careful review of the record, the sole discrepancy the Court can identify in Hartford's calculation of the Overpayment is that Hartford credited $6,000.00 for attorney's fees, whereas the Social Security Administration initially withheld twenty-five percent of Plaintiff's retroactive award, or $10,445.45.00, for a representative fee. However, as Hartford notes, (Dkt. No. 60-2, at 10 n.3), the maximum allowable attorney fee authorized by the Social Security Administration at the time was $6,000.00. *See* 42 U.S.C. § 406(a)(2)(A) (setting the maximum fee amount at $4,000 and providing the Commissioner with the authority to periodically increase the maximum fee); 87 Fed. Reg. 39,157, 39,157 (acknowledging the $6,000.00 "current maximum dollar amount for fee agreements" and providing that the amount will "increase to $7,200, effective November 30, 2022").

The difference between the fee credit applied by Hartford and the Administration's initial withholding does not indicate that Hartford's calculation of the Overpayment was inconsistent or

[8] The other documents cited by Plaintiff are November 29, 2022 and April 24, 2025 letters from Hartford informing him of the updated overpayment balances. (R. 1133, 848). The November 2022 balance ($29,155.00) is equal to the balance as of June 2022, minus 5 months of withheld $545.00 LTD benefits. (R. 1133). And the April 2025 balance, $12,850.00, is consistent with a thirty-five-month reduction in the overpayment since the balance calculated in June 2022. (R. 848). These calculations are thus likewise consistent.

that Hartford acted arbitrarily. On the contrary, Hartford clearly documented and informed Plaintiff of its rationale for applying the $6,000.00 credit—that is, that it was the "maximum" allowable attorney's fee. (R. 457). The record further shows that the initial $10,445.45 withholding by the Administration was not final, as the ultimate fee was subject to the Administration's approval. (R. 1409; *see also* R. 455 (April 19, 2022 phone call records indicating that Plaintiff expected to receive a $4,455.25 refund from the Administration)). In addition, the Policy provides Hartford with discretion "to recover . . . any amount that [it] determine[s] to be an overpayment." (Policy 18; *see also id.* at 17 ("We reserve the right to reduce Your Monthly Benefit by estimating the Social Security disability benefits You or Your spouse and children may be eligible to receive.")). Even drawing reasonable inferences in favor of Plaintiff and assuming the difference was not refunded, the Court cannot find that Hartford acted arbitrarily because it credited Plaintiff with a lower amount for attorney's fees, when that amount was the maximum permitted under the law.

Other deviations between the Social Security lump sum retroactively awarded to Plaintiff and the Overpayment calculated by Hartford appear to stem from Hartford's underestimation of Plaintiff's Social Security benefits, rather than from any over withholding or wrongful denial of benefits. For example, although Plaintiff received cost-of-living adjustments which increased his monthly SSD benefit at least twice, (*see* R. 1406–08 (increasing Plaintiff's original $1,955.00 monthly SSD benefit to $1980.70 in December 2020 and then to $2,097.50 in December 2021)),[9] Hartford applied the original monthly benefit amount of $1,955.00 across the entire time period

[9] The record also supports cost-of-living increases through 2026. (*See* R. 831 (Social Security Administration letter dated February 6, 2026 informing Plaintiff that "[b]eginning December 2025, [his] full monthly Social Security benefit before any deductions is $2,479.10" and that "[f]rom January 2025 to November 2025, the full monthly Social Security benefit before any deductions was $2,411.60."); R. 1204 (Social Security Administration letter dated November 15, 2023 informing Plaintiff that "[b]eginning January 2023, the full monthly Social Security benefit before any deductions is $2,279.90")).

when calculating the total Overpayment. Hartford also appears to have mistakenly credited $500.00 to the Overpayment balance, which it is not seeking to recover. (*See* Dkt. 60-2, at 10 n.4).

Neither the consistent reduction in the Overpayment balance over time, nor a typographical error that Hartford promptly corrected, is sufficient to show Hartford was arbitrary and capricious in withholding Plaintiff's benefits. *See Schlenger*, 785 F. Supp. 2d at 334–35 (granting summary judgment to insurer asserting counterclaim based on its entitlement to "offset the LTD benefit payments it made to Plaintiff by the amount of social security benefit payments that Plaintiff received"); *Conkright v. Frommert*, 559 U.S. 506, 509 (2010) ("People make mistakes. Even administrators of ERISA plans.").

"[A]n [ERISA plan] administrator abuses its discretion where its decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 139 (2d Cir. 2022) (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (internal citations and quotation marks omitted)). Hartford's decision to withhold benefits was supported by the Reimbursement Agreement Plaintiff signed as well as the Policy governing the plan, and the record shows Hartford's representatives repeatedly responded to Plaintiff's concerns regarding the calculation, informed Plaintiff regularly regarding the Overpayment balance and its calculation, and promptly corrected all errors. Accordingly, the Court finds Hartford's withholding of benefits was not arbitrary and capricious and does not represent an inappropriate exercise of its discretion.

**C. Untimely Claims**

In his motion for summary judgment, Plaintiff appears to assert claims that were not raised in his original or amended complaints. (Dkt. No. 55, at 3–4; *see* Dkt. Nos. 2, 29). First, Plaintiff argues that Hartford failed to comply with its disclosure and recordkeeping

requirements under 29 U.S.C. § 1024(b) because it "omitted numerous relevant documents and included duplicates and missing sequence numbers" in the administrative record. (Dkt. No. 55, at 3). Second, Plaintiff asserts a claim of intentional infliction of emotional distress (IIED), arguing that Hartford intended to intimidate and distress him when it "direct[ed] medical providers to alter opinions based on surveillance" and "deliver[ed] surveillance materials to Plaintiff's medical offices." (*Id.* at 3–4). The Court previously granted Defendant's motion to dismiss Plaintiff's state law claims and denied the motion only insofar as Plaintiff's amended complaint alleged a denial of benefits claim under ERISA § 502(a)(1)(B). (Dkt. No. 39, at 6).

"Generally, courts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment." *Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009), *aff'd*, 358 F. App'x 229 (2d Cir. 2009); *see also Gabriel v. Newrez LLC*, No. 19-cv-6738, 2023 WL 2587506, at *7, 2023 U.S. Dist. LEXIS 47846, at *18 (E.D.N.Y. Mar. 21, 2023) ("Courts 'have consistently ruled that it is inappropriate to raise new claims for the first time in submissions at the summary judgment stage.'") (quoting *Bal v. Manhattan Democratic Party*, No. 16-cv-2416, 2018 WL 6528766, at *2 n.2, 2018 U.S. Dist. LEXIS 209680, at *6 n.2 (S.D.N.Y. Dec. 12, 2018) (internal quotation marks and citation omitted), *aff'd*, 808 F. App'x 55 (2d Cir. 2020). The Second Circuit has accordingly noted its refusal "to address the merits of claims raised for the first time at [the summary judgment stage] of the litigation." *Rojo v. Deutsche Bank*, 487 F. App'x 586, 588–89 (2d Cir. 2012); *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) ("The district court noted that these claims 'need not be considered' because plaintiff raised them for the first time in opposition to summary judgment . . . . We agree with the district court.").

First, as to Plaintiff's claim that Hartford failed to comply with ERISA's disclosure and recordkeeping requirements, the subsection cited by Plaintiff, ERISA § 104(b)(4), provides that, upon the plan participant's written request, the plan administrator must furnish certain documents. 29 U.S.C. § 1024(b)(4); *see Perlman v. General Electric*, No. 24-cv-514, 2024 WL 4635235, at *3, 2024 U.S. App. LEXIS 27662, at *7–8 (2d Cir. Oct. 31, 2024). However, Plaintiff does not allege that Defendant Hartford failed to furnish records in response to his written request; rather, he argues that "Hartford's submission omitted numerous relevant documents." (Dkt. No. 55, at 3). The Court notes that it is unclear whether Plaintiff is raising a claim regarding deficiencies in the administrative record, or if Plaintiff is asserting a new cause of action under ERISA § 104(b)(4).

In any event, the administrative record here is complete on Plaintiff's sole remaining claim—denial of benefits under ERISA § 502(a)(1)(B). *See supra* Part IV.B. Hartford further argues that any documents originally omitted from the administrative record were immaterial, and that any duplicates in the administrative record do not violate ERISA or otherwise prejudice Plaintiff. (Dkt. No. 61, at 18–19). Plaintiff cites one document which he argues is "missing" a sequence number, (Dkt. No. 55, at 3 (citing R. 1142)), but, as Hartford notes, this document is one of "several records Plaintiff submitted throughout his claim [that] have a black border that obscures the [B]ates label." (Dkt. No. 61, at 18 n.8). The Court therefore denies any belated attempt by Plaintiff to add an ERISA claim under § 104(b)(4) without seeking leave, after the time to do so has expired, and after the parties have moved for summary judgment.

Second, regarding Plaintiff's IIED claim, the Court declines to exercise supplemental jurisdiction for any additional state law claims raised at this stage. *See Deutsch v. Hum. Res. Mgmt., Inc.*, No. 19-cv-5305, 2020 WL 1877671, at *6, 2020 U.S. Dist. LEXIS 65926, at *13

(S.D.N.Y. Apr. 15, 2020) ("'[D]istrict courts may decline supplemental jurisdiction over a claim' where the court 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)); *see also Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011) ("Although section[] . . . 1367(c) [is] permissive rather than mandatory, we have generally held that where all federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims.").

* * *

Based on the above, and upon careful review of the administrative record, the Defendant's calculation of the Overpayment was supported by substantial evidence and proper consideration of the relevant factors and was unaffected by clear error of judgment. Accordingly, the decision to withhold Plaintiff's LTD benefits was not arbitrary and capricious and Defendant is entitled to summary judgment.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment, (Dkt. No. 55), is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment, (Dkt. No. 60), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's amended complaint, (Dkt. No. 29), is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's letter request, (Dkt. No. 75), for expedited consideration is **DENIED** as moot; and it is further

**ORDERED** that the Clerk of Court shall provide Plaintiff with copies of the unpublished decisions cited in this Memorandum Decision and Order; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 20, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge